UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>HARTWIG TRANSIT, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 14-03843<br><br>Hon. Donald R. Cassling |

**PRELIMINARY OBJECTION OF RBS CITIZENS, N.A. TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND DEMAND FOR ADEQUATE PROTECTION**

RBS Citizens, N.A., d/b/a Charter One, successor by merger with Charter One Bank, N.A. (the "Bank"), by and through its undersigned attorneys, hereby objects to the *Motion for Use of Cash Collateral Pursuant to §§ 363(c)(2) and (3) of the Bankruptcy Code and Bankruptcy Rule 4001(b)* (the "Cash Collateral Motion") filed by Hartwig Transit, Inc. (the "Debtor" or "Hartwig"). The Bank also demands adequate protection for the Debtor's use of its non-cash collateral in light of its intention to use that collateral to support post-petition operations. In support of this objection, the Bank respectfully represents and sets forth the following statements:

**PRELIMINARY STATEMENT**

1.    After more than four years of litigation in which the Debtor's unsubstantiated claims of wrongdoing were dismissed no fewer than three times at the pleading stage, final judgment entered in favor of the Bank and against the Debtor on February 6, 2014 in the aggregate amount of $4,830,733.14. This judgment remains secured by the first priority, perfected security interest granted by the Debtor to the Bank against all of the Debtor's assets

and all proceeds of those assets. It also remains subject to the first priority, perfected lien against 127 of the Debtor's trucks and other vehicles.[1]

2.  During the litigation, the Debtor has failed to provide the Bank with any current financial reporting or other disclosure about its assets, liabilities, and overall financial condition. As a result, the Bank has been granted no insight into the condition or value of its collateral.

3.  Despite seeking interim relief on fewer than two business days' notice, the Debtor continues its lack of disclosure to such a degree in the Cash Collateral Motion that it fails to meet the standard needed to obtain use of the Bank's cash and non-cash collateral on such short notice. For example, there is no indication in the Cash Collateral Motion as to when any of the expenses included in the accompanying budget (the "Budget") need to be made or whether any emergency exists that would require interim relief on such short notice. There is also no indication in the Cash Collateral Motion of when the Debtor expects to receive the $1,016,635.70 in income described in the Budget. Instead, the Debtor has recently revealed that it intends to spend only $112,766.60 during the first three weeks of this case, with the remainder to be spent only after February 28, 2014. Thus, there is no emergency and the Debtor will not suffer immediate or irreparable harm in the absence of the relief requested.

4.  What the Cash Collateral Motion does reveal is that if the Debtor is allowed to spend all the expenses it plans to incur, then it will likely run out of money. Where the Budget fails to include any amounts for payment of professional fees, U.S. Trustee's fees, or any other of the ordinary expenses associated with the operations of a Chapter 11 debtor, it would appear that

---

[1] The Debtor's claim in the Cash Collateral Motion that the Bank holds liens against only 42 vehicles is simply incorrect.

the risk is quite high that this bankruptcy case is, or will soon become, administratively insolvent.

5. For these reasons, those described below, and the evidence to be adduced (or not) at the hearing on the motion, the Bank requests this Court (a) to deny the interim relief sought in the Cash Collateral Motion, (b) to set a hearing on the remainder of the relief sought during the week of February 24, 2014, upon appropriate notice to all interested parties, including the Bank, providing them with a full and fair opportunity to appear and be heard, and (c) to require the Debtor to provide an appropriate level of financial disclosure and discovery in advance of that process. Alternatively, to the extent that the Court grants the interim relief sought, the Bank requests that such relief be conditioned upon the Debtor providing the Bank with the full range of adequate protection described below.

## FACTUAL BACKGROUND

**A.    The Pre-Petition Loan Arrangement between the Debtor and the Bank.**

6. The Bank holds a judgment (the "Judgment") dated February 6, 2014 against the Debtor in the aggregate amount of $4,830,733.14 issued in the matter styled as *Hartwig Transit, Inc., et al. v. RBS Citizens, N.A.*, in the Circuit Court of Cook County, Illinois County Department, Chancery Division, Case No. 09-CH-16606. A true and accurate copy of the Judgment is annexed hereto as Exhibit A.

7. The Judgment arises from a complex set of loans and other agreements (collectively, the "Loan Documents") between the Bank and Hartwig, including the following:

> a.  a Loan and Security Agreement dated as of July 3, 2008 (a true and accurate copy of this Loan and Security Agreement is annexed hereto as Exhibit B);

    b. a Term Note in the original principal amount of $2,277,844.74 and dated as of July 3, 2008;

    c. a USD Amortizing Interest Rate Swap Confirmation dated as of July 7, 2008, Reference No. COB01547;

    d. a Term Note in the original principal amount of $712,464.06 and dated as of July 3, 2008;

    e. a USD Amortizing Interest Rate Swap Confirmation dated as of July 7, 2008, Reference No. COB01549;

    f. a Term Note in the original principal amount of $900,000.00 and dated as of July 3, 2008;

    g. a Term Note – Line of Credit in the original principal amount of $300,000.00 and dated as of July 3, 2008;

    h. a Revolving Note in the original principal amount of $600,000.00 and dated as of July 3, 2008;

    i. a Term Note in the original principal amount of $140,000.00 and dated as of June 20, 2008; and

    j. a Limited Guaranty dated as of July 3, 2008 by which Hartwig absolutely and unconditionally guaranteed the full and punctual payment to the Bank of all sums owed to it by 4R Enterprises, Inc. under a Term Note in the original principal amount of $156,642.31 and dated as of July 3, 2008.

    8. In accordance with the terms of the Loan and Security Agreement referenced above, all amounts owed to the Bank under the Loan Documents and the Judgment are secured by a first priority, perfected security interest in all of the Debtor's assets including, without

4

limitation, accounts, inventory, equipment, all proceeds and profits arising from these assets. A true and accurate copy of the UCC-1 financing statements recorded in favor of the Bank are annexed hereto as Exhibit C. The Bank also holds a first priority lien against 127 trucks and other titled vehicles owned by the Debtor.

9. In late 2009, the Debtor and its affiliates defaulted under the Loan Documents, but brought suit against the Bank as a tactical maneuver to delay the time that they would need to honor their obligations to the Bank. All of the Debtor's claims were dismissed on three separate occasions, including a dismissal "with prejudice" on June 28, 2011 and an order dated November 22, 2011 striking in its entirety the Debtor's Fourth Amended Complaint. Thereafter, the Bank obtained summary judgment against Hartwig which ultimately led to Judgment entering against it on February 6, 2014.

10. The following day, without any warning or attempt at negotiations, the Debtor filed this bankruptcy case.

B. **The Relief Sought in the Cash Collateral Motion.**

11. The Cash Collateral Motion requests authority for the Debtor to use approximately $1 million of the Bank's cash collateral (the "Cash Collateral") and all of its non-cash collateral (*i.e.*, the vehicles in which the Bank has a security interest - hereinafter, the "Vehicles" and, together with the Cash Collateral, the "Collateral") for approximately one month without providing any information concerning the financial condition, assets, or liabilities of the Debtor. Moreover, the Debtor proposes to use the Collateral without providing the Bank any meaningful adequate protection. It only offers to provide the Bank with a lien against assets in which it already has a security interest, despite the facts that (i) the Cash Collateral and Vehicles are depreciating in value every day they are used, and (ii) the Debtor has not provided the Court

with any indication that the Debtor will be generating additional cash flow during the bankruptcy case not already subject to the Bank's liens.

12. Despite the extraordinary and emergent nature of the relief it seeks, the Cash Collateral Motion is not supported by an affidavit explaining the Debtor's allegedly dire circumstances and/or underlying financial condition. Instead, a weekly breakdown of the Budget provided to the Bank less than one full day before the hearing on the Cash Collateral Motion reveals that approximately 91% of the expenses to be incurred under the Budget will not be spent until after February 28, 2014. A true and accurate copy of this weekly budget provided by counsel to the Debtor is annexed hereto as Exhibit D. There is clearly no emergency relating to those expenses and the Debtor has not proffered any evidence to support the suggestion that the remaining 9% of the expenses must be incurred now in order to avoid immediate and irreparable harm.

### THE COURT SHOULD DENY THE CASH COLLATERAL MOTION

**A.    There is No Present Emergency Requiring That a Hearing be Held on Short Notice.**

13. Upon preliminary hearing, the court may authorize the use of cash collateral only to the extent "necessary to avoid immediate and irreparable harm to the estate," Fed. R. Bankr. P. 4001(b)(2), and only where "there is a reasonable likelihood that the trustee will prevail at the final hearing." 11 U.S.C. § 363(c)(3). The Cash Collateral Motion fails to provide any supported grounds for its emergency request to use the Cash Collateral on such short notice. Pursuant to the Cash Collateral Motion, the Debtor asks the Court to conduct an emergency hearing, on fewer than two full business days' prior notice to the Bank and interested parties. In these circumstances, the notice provided is wholly illusory, and – in this instance - likely no notice at all. Despite seeking emergency relief, the Debtor offers no affidavits, declarations or other

evidence demonstrating that authorization to use the Cash Collateral in any amount is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2). Indeed, the Debtor's most recent weekly budget reveals that – with respect to 91% of the relief it is seeking – there is simply no emergency. As a consequence, there do not appear to be any emergent circumstances that would warrant such extraordinary relief. Moreover, a review of the Budget leaves one to guess where the emergency arises and what expenses must be met to avoid immediate and irreparable harm.

14. Given the lack of information and support for the requested emergency consideration, the Debtor has failed to provide parties in interest with sufficient notice of the relief requested. Accordingly, the Debtor has failed to meet the due process requirements set forth by the United States Supreme Court:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), *see also, Owens-Corning Fiberglas Corp., v. Center Wholesale, Inc., (In re Ctr. Wholesale, Inc.)*, 759 F.2d 1440, 1448 (9th Cir. 1985) (examining adequacy of one day notice in light of Bankruptcy Code statutory requirements, safeguards and remedies and holding that cash collateral order was void where notice of hearing on order was inappropriate in the circumstances and violated the requirements of the Due Process Clause). Here any order authorizing the use of the Cash Collateral, even on an interim basis, will effectively be final because once the cash is used it cannot be replaced and the Bank will be irreparably harmed.

15. The Bank submits that the hearing notice, received fewer than two full business days before the hearing, came too late and provided insufficient information to permit the Bank adequately to prepare and present its objections. In view of the deficient notice and ambiguity with respect to the relief requested and the Debtor's financial situation (including the fact that the Debtor has recently revealed that most of the cash it is proposing to use under the Budget will not be received until the end of this month), no harm will befall the Debtor if the Court denies consideration of the Cash Collateral Motion until such date and time as interested parties, including, but not limited to, the Bank, have had a full and fair opportunity to consider its implications and, where desired, conduct appropriate discovery of the Debtor.

**THE DEBTOR HAS NOT MET ITS BURDEN OF PROOF WITH RESPECT TO ADEQUATE PROTECTION OF THE BANK'S INTEREST IN THE COLLATERAL AND THE CASH COLLATERAL MOTION SHOULD BE DENIED**

16. In accordance with 11 U.S.C. § 363(c)(2), the Debtor is prohibited from using the Bank's cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use. . ." 11 U.S.C. § 363(c)(2). This restriction is critical "for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the Debtor." *In re Earth-Lite, Inc.*, 9 B.R. 440, 443 (Bankr. M.D. Fla. 1981); *see also In re EES Lambert Associates*, 62 B.R. 328, 343 (Bankr. N.D. Ill. 1986) ("[c]ash collateral is a unique form of collateral that requires special protection since it is most likely to be consumed during the reorganization process and is at times subject to change on an almost daily basis.").

17. The Bank does not consent to the use of the Cash Collateral.

18. Accordingly, this Court may grant the authorization over the Bank's objection only if the Bank is provided with adequate protection. It is the Debtor's burden to demonstrate that the adequate protection it is proposing to provide to the Bank is sufficient. *See* 11 U.S.C. § 363(p)(1). In this regard, the Bankruptcy Court for the Central District of Illinois has indicated:

> "Adequate protection is designed to preserve the secured creditor's position as it existed at the time of the bankruptcy filing. . . . A finding of adequate protection should be premised on facts, or on projections grounded on a firm evidentiary basis. Congress did not contemplate that a secured creditor could find its position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects. . . . The burden is on the movant to prove that existing lienholders are adequately protected." 11 U.S.C. § 364(d)(2) [internal citations omitted].

*In re Windsor Hotel, L.L.C.*, 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003).

19. It is the Bank's burden to establish the validity, priority and extent of its security interest. 11 U.S.C. § 363(p)(2); *see In re Mosello*, 195 B.R. 277, 287 (Bankr. S.D.N.Y. 1996). *See also, In re EES Lambert Associates*, 62 B.R. at 343. This is readily done because the Loan Documents and Judgment provide *prima facie* evidence of the validity, priority, and extent of the Bank's security interest in the Collateral. Accordingly, the Bank has met its burden pursuant to 11 U.S.C. § 363(p)(2).

20. Because adequate protection is mandatory, the relief requested in the Cash Collateral Motion must be denied if the Debtor cannot provide adequate protection. *See In re Leavell*, 56 B.R. 11, 13 (Bankr. S.D. Ill 1985) (directive of Code to Court that automatic stay must be terminated unless debtor provides adequate protection is nondiscretionary and mandatory).

21. Cash collateral is the highest and best form of collateral, and because it is rapidly consumed by a debtor's ongoing operations, there is a high standard for adequate protection of a

9

lender's interest. *In re Earth-Lite, Inc.*, 9 B.R. at 443. Adequate protection is required to protect against the decline in value caused both by a debtor's use of cash collateral and also by general economic conditions. *See generally In re Markos Gurnee Partnership*, 252 B.R. 712 (Bankr. N.D. Ill. 1997) (adequate protection meant to assure that secured creditor does not suffer decline in value of interest in estate's property); *In re Addison Prop. Ltd. P'ship*, 185 B.R. 766, 769 (Bankr. N.D. Ill. 1995); *In re 160 Bleecker Street Assocs*, 156 B.R. 405, 413 (S.D.N.Y. 1993). The interest to be protected here is not limited to the Bank's loss of the immediate right to enforce the Judgment due to the automatic stay. The Debtor's request to use Cash Collateral also threatens the Bank with loss of the right to apply all proceeds to satisfy arrearages under the Loan Documents. *In re EES Lambert Associates*, 62 B.R. at 343-344.

22. "Exactly what constitutes adequate protection must be decided on a case-by-case basis. . . . The focus of the requirement is to protect a secured creditor . . . from diminution in the value of its interest in collateral during the reorganization process." *In re Energy Partners*, 409 B.R. 211, 236, (Bankr. S.D. Tex. 2009) [internal citations omitted]; *see also In re Carbone Companies, Inc.*, 395 B.R. 631, 634 (Bankr. N.D. Ohio 2008); *In re O. P. Held, Inc.*, 74 B.R. 777, 782 (Bankr. N.D.N.Y. 1987). In that regard, and as stated in *Federal Nat. Mortg. Ass'n*, federal bankruptcy courts "should take whatever steps are necessary to ensure [secured creditors are] afforded in federal bankruptcy court the same protection he would have had under state law if no bankruptcy had ensued...." 153 B.R. 204, 211 (Bankr. N.D. Ill. 1993).

23. While the Court should be flexible in applying the adequate protection standard, "such flexibility must not operate to the detriment of the secured creditor's interest." *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988); *In re EES Lambert Associates*, 62 B.R. at 343 (use of cash collateral must be prohibited or conditioned as is

10

necessary to provide adequate protection of secured creditor's interest). Therefore, the Debtor's authorization to use cash collateral is subject to the mandate to prohibit or condition its use as is necessary to provide adequate protection of the Bank's interest in such cash collateral. 11 U.S.C. § 363(e).

24. Three non-exclusive methods of providing adequate protection are specified in 11 U.S.C. § 361: (1) periodic cash payments to offset any decrease in the value of the creditor's interest; (2) additional or replacement liens on debtor's property; and (3) such other relief resulting in the "indubitable equivalent" of the creditor's interest. *See* 11 U.S.C. § 361.

25. In the Cash Collateral Motion, the Debtor proposes to provide the Bank with the following limited forms of "adequate protection":

   a) The Bank shall be granted valid and perfected replacement liens in and to the Collateral to the same extent and with the same priority as held pre-petition; and

   b) Insurance shall be maintained on the Collateral and Vehicles, listing RBS Citizens as lienholder and loss payee.

*See* Cash Collateral Motion, ¶17. However, the Debtor has failed even to suggest that it will be generating any additional income after it spends the amounts provided in the Budget or that any such income would not already be encumbered by a lien in favor of the Bank.

26. The Debtor's offer of adequate protection is woefully deficient, considering it offers the Bank no greater protection than the Bank had in the prepetition period as a result of the Bank's security interest in after acquired property provided by the Loan Documents. And, with respect to the Vehicles, there is no adequate protection being offered at all for the diminution in value that will occur with every mile they are driven.

27. The post-petition effect of a pre-petition security interest is governed by 11 U.S.C. § 552(b)(1), which provides as follows:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1).

28. Accordingly, the Bank's pre-petition security interest in the Collateral continues with respect to all proceeds, product, offspring, or profits of the Collateral. See 11 U.S.C. § 552(b); *Financial Sec'y Assur., Inc. v. Tollman-Hundley Dalton, L.P.*, 74 F.3d 1120, 1124-25 (11th Cir. 1990). Consequently, the Debtor's offer to provide the Bank with adequate protection in the form of a replacement lien against the very same post-petition Collateral would grant the Bank nothing more than it already had as of the petition date. *See In re Union-Go Dairy Leasing, LLC*, 2010 WL 1848485 (Bankr. S.D. In. 2010); *see also In re Wiegmann*, 95 B.R. 90, 94 (Bankr. S.D. Ill. 1989) (recognizing section 552(b)(1) exception). Moreover, "'proceeds' is not limited to the technical definition of that term in the Uniform Commercial Code, but covers any category of assets into which property subject to the security interest is converted. *In re Kids Creek Partners, L.P.*, 210 B.R. 547, 553 (Bankr. N.D. Ill. 1997) (citing HR Rep. No. 595, 95th Cong., 1st Sess. 376–377 (1977)).

29. In addition to providing adequate protection in the Cash Collateral, the Debtor must also be required to provide the Bank with adequate protection for its use of the Vehicles. Although the Debtor's use of the Vehicles is implicit in the relief requested through the Cash Collateral Motion, it does not appear that the Debtor is offering any adequate protection with respect to the continued use of Vehicles (the number of which was grossly understated in the

Cash Collateral Motion). The Vehicles, like the Cash Collateral, are inherently wasting assets that deteriorate in value with every passing day. *In re Zeoli*, 249 B.R. 61, 64 (Bankr. S.D.N.Y. 2000) (noting, in context of adequate protection of creditor's interest in car, that "[t]here can be no doubt that . . . the vehicle, like almost all used cars, is a wasting asset"); *In re Kenny Kar Leasing*, 5 B.R. 304, 305, 309 (Bankr. C.D. Cal. 1980) (holding that where creditor of debtor engaged in leasing of automobiles was secured by non-cash collateral consisting of automobiles and rental stream from lease thereof, "the depreciation associated with [debtor's] use of the non-cash collateral [] expose[d] [creditor] to a decrease in the value of its interests").

30.    In addition to the insufficiency of the Debtor's proposed adequate protection, the Cash Collateral Motion and the Budget lack the required specificity to determine how the Debtor plans to use the Cash Collateral during the interim period and whether such use is necessary to avoid irreparable harm. For example, there is no explanation of whether the "drivers wages," "payroll taxes," or the various insurance expenses are intended to cover pre- or post-petition expenses. Notably, there are no line items for administrative expenses that will accrue during the pendency of this case. In this regard, the cash flow projected from the Debtor's operations appears woefully insufficient to support a successful reorganization.

31.    The Debtor also provides no evidence to support its assertion that the Collateral, including the Vehicles, has a combined estimated current market value of at least $834,727.24.[2] The Budget reveals that the Debtor is operating at a loss, which adversely affects the Collateral securing the obligations to the Bank.

---

[2] This figure is neither explained nor supported in the Cash Collateral Motion. The Debtor estimates that the current market value of the Vehicles is $484,000.00, its current cash on hand $63,636.28, and otherwise discloses no other information about its assets.

13

32.     Based on this record, the Debtor has failed to sustain its burden to establish that its proposed replacement lien will provide the Bank with adequate protection for the Debtor's use of the Cash Collateral. The value of any replacement liens granted to the Bank on the assets in which it already has a security interest is insufficient here to protect the Bank's interests, because, as the Cash Collateral is used by the Debtor, it will be replaced only by further accounts receivable and proceeds of assets in which the Bank already has a security interest.

### **RESERVATION OF RIGHTS**

33.     For the reasons set forth above, the Debtor has failed to provide the Bank with adequate protection that passes muster under even the lowest standard permissible under the Bankruptcy Code. For these reasons, the Court should deny the Cash Collateral Motion.

34.     Nevertheless, to the extent the Court allows the Debtor to use the Collateral, the Bank submits that the Debtor should, at a minimum, be required to provide the Bank with the following forms of adequate protection, among others:

    a)    Monthly adequate protection payments in an amount sufficient to preserve the current value of the Bank's interest in the Collateral;

    b)    A grant of a post-petition security interest -- to the extent of any diminution in the value of the Collateral -- in and upon all of the Debtor's post-petition assets, including, but not limited to, accounts, equipment, general intangibles, goods, real estate, and leasehold interest as well as all products and proceeds thereof (the "Adequate Protection Liens"), and which Adequate Protection Liens could not be primed by any other lien or encumbrance, whether by order of the Court or the passage of time;

    c)    A superpriority administrative expense claim under 11 U.S.C. §§ 503(b) and 507(b) to the extent that the Adequate Protection Liens prove insufficient to protect the Bank from a diminution in the value of the Collateral, with the sole carveout from that claim being in respect of the quarterly fees due to the United States Trustee pursuant to 28 U.S.C. § 1930A;

    d)    The imposition of certain default and termination rights, including, without limitation, relief from the automatic stay;

  e) A wide range of financial reporting, including weekly reports comparing the actual use of cash to the amount budgeted for each week and the right to inspect and to appraise the Collateral; and

  f) Liens on all of the Debtor's unencumbered assets, including but not limited to motor vehicles.

35. The Bank also reserves the right to raise other and further objections to the Cash Collateral Motion should it proceed further on the merits.

WHEREFORE, the Bank respectfully requests that this Court enter an order (i) denying the Cash Collateral Motion, (ii) conditioning the use of any of the Vehicles on the Debtor's providing adequate protection payments to the Bank, and (iii) granting such further relief as the Court deems just and proper.

Dated: February 10, 2014

                Respectfully submitted,

                RBS CITIZENS, N.A.,

                By: /s/ Jeffrey D. Ganz
                   One of Its Attorneys

Jeffrey D. Ganz (ARDC # 6307515)
Riemer & Braunstein LLP
71 South Wacker Drive, Suite 3515
Chicago, IL 60606
Telephone: (617) 880-3568
Facsimile: (312) 780-1212
jganz@riemerlaw.com

1658148.4